## BOYSON v. HURST.

1. APPEAL AND ERROR—EVIDENCE—MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING VERDICT, NEW TRIAL—CONTRIBUTORY NEGLIGENCE.

Testimony is viewed as strongly as reasonably possible in favor of plaintiff on defendant's appeal from denial of his motions for directed verdict and new trial on ground that plaintiff was guilty of contributory negligence as a matter of law.

2. EVIDENCE—COMMON KNOWLEDGE—SPEED OF AUTOMOBILES AT NIGHT.

It is a matter of common knowledge that an accurate determination of the speed of a vehicle approaching an observer at night when the street lights are on is difficult, if not impossible.

3. AUTOMOBILES—INTERSECTIONS—SPEED—NIGHTTIME—INTOXICATED DRIVER—CONTRIBUTORY NEGLIGENCE.

Southbound motorist was not guilty of contributory negligence as a matter of law in proceeding at night across intersection with 3 westbound lanes after having stopped, where nearest traffic was about 1,000 feet away and speed limit for approxi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 947.
[2] 20 Am Jur, Evidence § 18.
[3, 4] 5A Am Jur, Automobiles and Highway Traffic § 712.

mately last two thirds of such distance was 35 miles per hour, as she was not bound to anticipate defendant would be intoxicated or that he would drive through such zone at a rate more than twice the permitted maximum.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ANTICIPATION OF NEGLIGENCE.

Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant as no one need anticipate an unlawful act.

5. SAME—CASE DETERMINED ON BASIS OF FACTS INVOLVED.

Each case of negligence and contributory negligence must be determined on the basis of the facts involved.

Appeal from Wayne; Glennie (Philip J.), J., presiding. Submitted October 3, 1956. (Docket No. 30, Calendar No. 46,941.) Decided December 6, 1956.

Case by Margaret Boyson against Lee Hurst, Jr., for damages for personal injuries received in automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Charles R. Forster,* for plaintiff.

*Zwerdling, Zwerdling, Keith & Livingston (John W. Keith,* of counsel), for defendant.

CARR, J. While operating an automobile on a public street in the city of Highland Park, plaintiff's car was struck by that of defendant and plaintiff sustained severe physical injuries. The present suit for damages has resulted. The accident happened on May 15, 1953, at approximately 9:40 p.m. At that time plaintiff was driving in a southerly direction on Lincoln which intersects Davison avenue. The latter thoroughfare was a divided through highway with 3 lanes for traffic on either side of the center. It was plaintiff's claim that as she approached Davison she stopped her vehicle at the stop sign,

and then proceeded to a point in close proximity to the entrance to Davison where she stopped to make further observation. At that time she was able to see to the east, from which direction defendant's car was approaching, for a distance of possibly 1,000 feet, as she testified on the trial. She noticed the headlights of 2 cars in proximity to Hamilton avenue, the first street east of Lincoln. It should be noted that at the time of the accident there was an underpass at Hamilton for traffic on Davison.

It was plaintiff's testimony on the trial that the Hamilton underpass was 664 feet from where she stopped, that the automobile lights that she observed were beyond the Hamilton underpass, and more than the distance specified from her position. Thereupon plaintiff concluded that she could cross the north half of Davison in safety, and proceeded in the attempt to do so. She looked to her right for traffic approaching on the south side of the street that she was crossing, and did not again look to her left until practically at the instant she was struck by defendant's car.

The proofs on the trial indicated that defendant was driving under the influence of intoxicating liquor, at a rate of 70 or 75 miles per hour from the Hamilton underpass to the point where the collision occurred. He did not slacken his speed at any time, nor does it appear that he made any effort whatever to avoid the impact. The maximum rate of speed on Davison was at the time 45 miles per hour, and from the underpass to the intersection of Lincoln such rate was 35 miles. Plaintiff testified that she knew the speed limit referred to, and implied by her testimony that she gave it consideration in reaching a conclusion that she could cross the north half of Davison in safety.

At the conclusion of plaintiff's proofs defendant moved for a directed verdict in his favor on the

ground that · plaintiff .was guilty of contributory
·negligence as·a matter of law. The motion was taken
under· advisement* and, no ·proofs being introduced
by defendant, the case was submitted to the jury.
Verdict in: favor .of .plaintiff ·in the sum of $3,500
was returned. Motion for. judgment notwithstand-
.ing .the verdict' was .made· and denied. · Defendant
also moved for a new trial on the ground that the
.verdict·of the jury was contrary to the great weight
.of the evidence. . This motion was also denied. De-
.fendant has appealed.

In determining· whether plaintiff was guilty of con-
.tributory negligence.as.a matter of law the testimony
.must.be..viewed as strongly as reasonably possible
in her favor. The claim· of plaintiff that she was
not negligent is indicated by the following excerpts
from her ·testimony:

"*Q*. Tell us what happened?

"*A*. When I stopped I looked down Davison where
this car, I would say they are approximately a block
·and a half· judging from the· distance of the lights,
·and I knew that ·the speed limit on the Davison is
·45. . That. is the underpass, .the. one you come up
from the underpass, you are supposed to· slow down
to —

"*The Court:* How many?

"*A*. Thirty-five.

"*Q*. (*By Mr.· Forster, continuing*): Then?

"*A*. Then I started to cross. I felt I had plenty
of time to get across the one lane, that is to the
center, where then I had to make an observation to
the right for the westbound traffic. * * . *

"Before starting across I saw the lights of cars
·coming· from my left; there were not any cars in
the lane nearest me. There are 3 westbound lanes
on Davison and I saw a couple of sets of lights, but
I do not know which lane they were in. The lights

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann § 27.1461 *et seq.*).—Re-
porter.

were beyond the Hamilton underpass and were more than 664 feet from the position in which I was stopped at the time I observed them, which is marked by an 'X' on the map."

It thus appears from plaintiff's testimony that when she made her observation to the east before undertaking to cross the north half of Davison she saw the headlights of 2 cars beyond the Hamilton underpass and more than 664 feet distant. The testimony of plaintiff's witness George Strauch is also significant as bearing on plaintiff's conduct, as well as that of defendant. He stated in substance that he was operating an automobile on Davison in a westerly direction. Before reaching the underpass at Hamilton he passed a tractor and trailer proceeding in the center lane for westbound traffic. Thereafter he undertook to move into the same lane ahead of the tractor, at which time he observed defendant's car coming up behind him. Strauch testified that he was at the time traveling about 45 miles per hour, that defendant passed him at "a good 70 miles or better" and that, after passing, defendant moved over into the third lane. As appears from the record, the witness said:

"I was doing 45 miles per hour. I was about a quarter of the distance from the Hamilton overpass to Lincoln when the defendant's car passed me. The distance from the Hamilton overpass to Lincoln is about 664 feet and I would be about 166 feet past the Hamilton underpass at the time defendant's car passed me. At that time, he was in lane No 2 and I was in lane No 3. The tractor and semitrailer were behind me at that time. When I first saw Mrs. Boyson's car she had crossed lane No 1 and was completely in the second lane. At that time her car was moving. I was in lane No 3. At the time I saw her, the defendant's car was overtaking and passing me. I did not see her when she started up from the

stopped position. The defendant's car did not change his speed at all. The defendant neither increased nor decreased his speed and travelled in a straight line without swerving. The plaintiff's car was going slowly in a straight line from north to south on the west half of Lincoln. The defendant's car travelled 498 feet from the time he passed me until he collided with the plaintiff's car. His car was in plain view during that time. I could see the plaintiff's car from a point 166 feet west of the Hamilton overpass and at that time the defendant's car was right beside me. There was nothing obstructing the vision from the defendant or myself. At time of impact I was about 5 car lengths east of the 2 cars that collided."

It is contended on behalf of appellant that plaintiff was negligent as a matter of law in failing to continue her observation while crossing the north half of Davison, a distance of approximately 33 feet, and that it is uncertain whether either of the motor vehicles, the headlights of which she saw approaching when she made her observation, was the car driven by defendant. It is, however, a fair conclusion that defendant's automobile was 1 of the 2 vehicles in question, or that at the time defendant was behind the Strauch automobile and the truck and trailer that Strauch passed.

It does not clearly appear that under the circumstances plaintiff was in position to form a judgment as to defendant's then rate of speed. The accident occurred when there was an absence of daylight, the street lights were on, and it is a matter of common knowledge that in such a situation an accurate determination as to the speed at which a motor vehicle is approaching is difficult, if not impossible. Under the facts disclosed by the proofs, construed in plaintiff's favor, it may not be said, as a matter of law, that she failed to act as a reasonably careful and

prudent person would have acted under the same or like circumstances.

Plaintiff was not bound to anticipate that defendant would drive through a 35 mile per hour zone at a rate of more than twice such permitted maximum, nor was she required to act on the assumption that the driver of 1 of the approaching vehicles might be intoxicated. In *Winckowski* v. *Dodge,* 183 Mich 303, 312, it was said:

"Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act."

Of similar import are: *Guina* v. *Harrod,* 275 Mich 393; *Suarez* v. *Katon,* 299 Mich 38; and *Staunton* v. *City of Detroit,* 329 Mich 516.

Each case of this character must be determined on the basis of the facts involved. We are not confronted with a situation in the case at bar in which the plaintiff failed to make any observation whatsoever, or in which she failed to see what a reasonable observation would have revealed. She looked to her left before undertaking to cross the north half of Davison, and, based on what was to be seen from that point, arrived at the conclusion that she might proceed in safety. A like situation was involved in *Lefevre* v. *Roberts,* 250 Mich 675. There the plaintiff driver, who was operating a truck, stopped before crossing Gratiot road, which was at the time a trunk-line highway, and observed defendant's automobile approaching the intersection on Gratiot. He concluded that defendant was at least 400 feet from the intersection, and that he had time to cross. He proceeded at a rate of speed of approximately 3 miles per hour. A collision occurred in the intersection. In commenting on the situation it was said (pp 677, 678):

"If the automobile was 400 feet from the intersection when the driver of the truck started to cross (and upon this we must accept the truck driver's testimony), then it cannot be said as a matter of law that he was guilty of negligence, even though he made no further observation of the oncoming auto. Whether the truck driver was negligent in fact was an issue for the jury."

In *Lindzy* v. *Swaab*, 263 Mich 264, the accident involved occurred at the intersection of US highway 23 and Packard road in Washtenaw county. Plaintiff was driving east on the last-named thoroughfare and as she approached the trunk line she stopped her car, according to her claim, and looked both ways for traffic. At that point she could see a distance of 372 feet to the north. It was her claim that no car was in sight, that she undertook to cross, and that defendant's vehicle struck her automobile just as she had passed the center of the intersection. Plaintiff had verdict and judgment, and defendant appealed. Appellant's contention that the trial court was in error in refusing to hold plaintiff guilty of contributory negligence as a matter of law was rejected, this Court pointing out that the jury had otherwise determined and that there was evidence supporting the finding. Of like import is *Wallace* v. *Rosenfeld,* 285 Mich 204.

In *Garvit* v. *Krebs,* 338 Mich 256, plaintiff Jean Garvit, while driving on a certain highway in Livingston county, stopped about 5 feet south of a crossroad, looked to the west, from which direction defendant was approaching, and estimated the latter's distance from the intersection at approximately 300 feet. She concluded that she had time to cross and undertook to do so. Apparently she assumed that defendant would keep a proper outlook and would decrease his speed to avoid a collision. Plaintiffs had verdicts and judgments, and defendant appealed,

claiming failure to show freedom from contributory negligence. It was also argued that the verdicts of the jury were against the great weight of the evidence. In determining such issues in favor of the plaintiffs, it was said (p 259):

"It is unnecessary to review some of the questions or to dwell upon authorities, that on a motion for a directed verdict the testimony must be considered in the light most favorable to plaintiffs; that one having the right-of-way is not relieved from the duty to use reasonable care under the circumstances; that intersection cases are to be considered on their own merits; and that, under the circumstances of this case, the questions of negligence and contributory negligence are ordinarily for the jury.

"This is a case where the testimony shows that defendant was driving along a country road looking at the crops and fields nearby, and not paying too much attention to the approaching intersection. Plaintiff observed defendant's approach, made an estimate as to his speed and distance, and proceeded to cross as she thought she could safely do. The testimony shows that the defendant never looked but continued at the same high rate of speed, and collided with plaintiff's car. In a situation such as this, reasonable minds could differ and the questions of negligence were properly submitted to the jury."

The principles recognized and applied in the cases cited are controlling in the case at bar. Viewing the situation on the basis of the facts disclosed by the record, it may not be said that plaintiff was guilty of contributory negligence as a matter of law. The issue was for the jury. The trial court was not in error in failing to direct a verdict for defendant or in denying the motion for judgment notwithstanding the verdict of the jury. Neither may it be said that the verdict was against the great weight of the evidence. In consequence, the motion for a new trial was properly denied.

We find no reversible error in the case and the judgment is affirmed, with costs to plaintiff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred.

BOYLES, J., did not sit.